Oral argument not to exceed 15 minutes per side. Mr. John Pallas for the appellant. May it please the court. My name is John Pallas, Assistant Attorney General from the state of Michigan, representing the respondent appellant in this case, Warden Jeffrey Woods. I would like to reserve three minutes for  rebuttal. Good morning, your honors. Good morning, counsel. I plan on spending my time on two topics this morning. First, the applicability of AEDPA. AEDPA is applicable because the Michigan Court of Appeals denied petitioner's motion to remand containing the ineffective assistance of trial counsel claim on collateral review. Alternatively, AEDPA is applicable because the state trial court denied petitioner's ineffective assistance of appellate counsel claim on the merits, which on the facts of this case necessarily includes a finding that the underlying ineffective trial counsel claim was without merit. Second, under AEDPA, petitioner loses. The district court should not have granted habeas relief. Quite simply, the district court failed to apply the double deference of AEDPA and Strickland to the claim. But we assert that this is one of those cases that even under de novo review of the Strickland claim, a grant of habeas relief is not appropriate. First, as to the applicability of AEDPA, the district court and Marion questioned whether AEDPA deference even applies in this case. But there should be no question about that for two reasons. First, there is the motion, excuse me, the order on the motion to remand on collateral review. On collateral review, Marion filed a motion to remand in the Michigan Court of Appeals, referencing his ineffective assistance of trial counsel claim. And I just want to note for the court's reference, my footnote 2 on page 31 of my brief, I mistakenly cited the pages of the application, not the motion. That footnote should have referenced page ID numbers 1442 and 1444. While the accompanying application for leave to appeal was denied by the Michigan Court of Appeals, in what we all agree is an ambiguous fashion, citing Michigan Court Rule 6508D, which this court in Gilmette v. Howes says is ambiguous, the motion to remand was simply quote-unquote denied. Under Supreme Court precedent, Richter, and under precedent from this court, Nally and McClellan, there is presumption that such an order constitutes a merits adjudication of the discussion. Without any discussion, that's correct. And Judge Siler, the Richter decision from the United States Supreme Court said that all it takes to invoke this privilege or this presumption would be denied. It could be simply that alone, for that presumption to be invoked. Was that motion to remand, was it based upon newly discovered evidence or was it based on ineffective assistance of counsel? Specifically, the one on collateral review was based on ineffective assistance of trial counsel. The Marion acting pro se at that time was asking for the case to be remanded to the trial court so that he could have a so-called Ginther hearing on the specifically the ineffective assistance of trial counsel claim. That's correct. And it's our position that Marion hasn't overcome this presumption that Richter and Nally and McClellan talk about. And I know that opposing counsel, my adversary, has talked about the fact that the Michigan Court of Appeals denied the application on collateral review, citing that ambiguous language of 6508D. That does not mean it meant to do the same thing with the motion to remand. And one of the things I'd like to point out is if you look at that order in which three things had happened, it denied the application for failure to persuade under 6508D, then there was a motion to waive fees, which the court granted, and I don't think any of us would say that that was granted under 6508D. And then third, the motion to remand under 7211C1 was just simply denied. I mean the motion to remand and the application for leave to appeal were denied on two for fee grant separating those two. So I think it's very clear that the Michigan Court of Appeals did not intend to deny the motion to remand using the language 6508D. The structure of that order that it issued on collateral review is very helpful. Marion's argument to the contrary really makes no sense. If what he was saying were true, it's our position that the Michigan Court of both the motion to remand and the application for leave to appeal would have been denied in the same line citing 6508D. But we're not going to simply rely on the motion to remand. I think the district court, as it suggested, correctly suggested, the trial court's opinion in order denying the motion for relief from judgment, where the trial court denied Marion's ineffective assistance of appellate counsel claim on the merits, serves as an alternative means by which to determine that AEDPA applies. And we all agree here that the trial court improperly detuned the ineffective assistance of trial counsel claim. I'm not going to stand up here and say that's a merits adjudication. But in the course of adjudicating the appellate counsel claim, the court said defendant's argument fails because defendant cannot show any possible prejudice from appellate counsel's decision. Defendant was afforded a fair trial and full appeal. Defendant's claim is without merit. That's on page ID 1097, 1098. And as the district court noted, citing the Hodge versus Haberlin decision, a state court addressing a petitioner's federal claim in the course of resolving a different issue, it can be assumed that the federal court deemed to have adjudicated that federal claim on the merits. And the assumption is that it's also entitled to 2254 D1 deference. Knowing that AEDPA applies, I think, is very important in this case. Because I think part of the problem with the district court's opinion is that she struggled with determining whether or not AEDPA applied. And I think that leaked over into its merits discussion of whether or not the Strickland claim had any merit. It's, again, our position that had their, whether it's de novo review, whether it's AEDPA review, we prevail. But I'll talk about AEDPA first. The combination of the highly deferential standards of Strickland and 2254 D makes for doubly deferential judicial review. And the court knows the standard under Strickland. I'm not going to go through all of that. But essentially what we have presented here is a failure to investigate. And what do we know about that claim? And what do we know from the affidavits that were presented to the state courts? Well, trial counsel interviewed multiple witnesses, including Charles Lewis, who, per Lewis, told counsel that he was with Marion from 4 to 7 45 p.m. Together they went to a jewelry store in Hamtramck. They purchased a ring. They went to a party store to buy drinks. They went to Arnell's house. Then they went to Rochelle Moore's house where they partied. Did Lewis tell him all this in his original contact with him? That's what Lewis says in his affidavit. And we're going to assume for sake of this argument that that's true. So that all of that information was presented to trial counsel Shark. Now no witnesses, and this is what Shark says, no witness, including the alibi witnesses or Marion, was able to corroborate where they said at the time of the murder. And I think it's safe to assume here from all of these affidavits that trial counsel did not have the receipt showing the purchase of the engagement ring on that particular date. It would have been a good defense counsel to just call Lewis without corroboration, wouldn't it? I'm not so sure about that, Judge Seiler, because he had an excellent, excellent defense. He had a defense of the star witness of the prosecution, this Ricardo Sims individual, didn't come forward for many months after this murder. He only did so after he was himself on a federal offense, and he had an expectation that he would get a sentencing deal or his sentence would be reduced if he testified favorably for the state in this particular case. So I think actually what counsel, you can assume from this here, is that counsel said, look, I wanted the jury to focus entirely on the credibility of Ricardo Sims. I want to tear this guy apart. I don't want the jury to get confused with what could have been a, at least, uncorroborated alibi defense. So he wanted to focus, Judge Seiler, totally on on the defense that he had, which was the prosecution's star witness stinks, essentially. Did Marion testify at all in this case? No, he didn't. No, he didn't. It would have been helpful if he'd said something about it, but I realize he had a prior record, and that's probably why he didn't. Right, and I think running an uncorroborated, sketchy alibi defense might distract the jury from focusing on Sims and his credibility. If, for example, they found that they were turned off by that defense, they might take it out on trial counsel, and they may not believe him about his attacks on Ricardo Sims. So you could imagine ways in which what trial counsels did here was reasonable. And here's where the district court got this very seriously wrong. The district court made the following comments in granting habeas relief. Quote, compounding counsel's ineffectiveness is that he did nothing to discover and investigate evidence to corroborate Petitioner's alibi. That's at page ID 1743. Counsel never spoke with the owner of the jewelry store, nor did he attempt to locate the receipt. Counsel did nothing to verify Lewis's story. That's at page 1743 to 44. The problem with these assertions is there's nothing in the record of the case to support them. He's taking, basically the district court is taking a silent record and saying from the silent record, well I'm going to assume the trial counsel didn't do any investigation into any of these things. We don't know, for example, perhaps trial counsel did have the fiancee try to look for the receipt for the ring and she couldn't find it. Why would the fiancee have the receipt for the ring? Well, that's a good question. I'm not sure why she did. Apparently she did because she was able to find it. I mean, that might not be the first thing that trial counsel would have thought of. Well, let's go see if the fiancee to whom the ring was presented also has the receipt. Well, that's very true, Judge Batchelder. It wouldn't naturally come to me if I were a defense attorney. That's an excellent point. The store owner himself said, I mean, maybe when trial counsel spoke to him and he said, well I don't keep receipts more than six months. We have an affidavit that said that. So that maybe went nowhere. I think your excellent dissent in the Titlow opinion, Burt versus Titlow, and that went up to the U.S. Supreme Court is very helpful. It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of professional assistance. As in Titlow, what the district court did here was turn the presumption of effectiveness on its head by making assumptions that trial counsel did not perform effectively from a virtually silent record. Did the trial counsel in his affidavit say anything about the defendant, the petitioner here, told him he was there or he didn't say anything about what the plaintiff said? The affidavit is somewhat vague. There was an assertion that none of the witnesses, including Marion, could corroborate where they were on the date of the hearing. No, not in his affidavit. He was at some other place. No. And I see my time is up. I'll save my remaining time for rebuttal. Thank you, counsel. Thank you, your honors. Good morning. When Stephen Sharg agreed to take on Alan Marion's case, he was accepting probably the most serious task that a defense attorney in Michigan to and that is defending a client against a charge of first-degree murder. In our state, no crime is more serious. It is matched by a mandatory penalty of life imprisonment if a person is convicted. And from the very beginning of this case, to add to just the general severity of a murder charge, Attorney Sharg knew two things from his client. Number one, the client was maintaining his innocence. And number two, that the client said that he had alibi witnesses who could help him prove that. And at first, I think Attorney Sharg did what we would expect an attorney to do. He did talk to the proposed alibi witnesses and he filed a notice of alibi just about a month before the trial began. But his conduct after that point would let Mr. Marion down in probably the most significant way possible. Instead of following up on the known and easily verifiable leads that the main alibi witness did produce, Mr. Sharg gave up. How do we know that from the record? Your Honor, I would suggest based on the AG's position that they've actually got it just backwards. I think there are instances where a trial attorney does not give you any indication at all about what his or her reasoning is and you're forced to sort of hypothesize and speculate. But in this case, the defense attorney submitted an affidavit and that affidavit did offer specific information about why he did what he did. And what he suggested was that, yes, I talked to these witnesses, but I could not corroborate the things that they said. And so at that point, I decided not to use them. Counsel is asking this court to treat those words as silence. I think the fact that there is a defense attorney on record in a case saying these are the things that I did. What does I could not corroborate? What are we supposed to, in your view, mean that I talked to these people and I did nothing further? Or does I could not corroborate mean I couldn't find anything else that would corroborate? I think he says, and if the court will forgive me, I'll... Yes. So what he says, and this is at page ID 1256, is that at the time, none of the prospective witnesses could corroborate where they believed themselves to be. So he puts the burden, I think, quite clearly on the prospective witnesses to demonstrate where there were. There's a note in the government's pleading that makes reference to the fact that defense counsel can't be expected to scour the corners of the earth to find evidence that may or may not lead to something, but that is not at all what we had here. The information, if we accept Charles Lewis's affidavit, is that he said that he was with Mr. Marion. They went to a jewelry store in Hamtramck and were there for about an hour before they went on about their business. Hamtramck is a city that is completely subsumed by the city of Detroit. And rather than expecting him to scour the earth, he could have said, and I think would have said in an affidavit, had he done these things, he could pick up the phone and call the store owner and say, Hey, listen, I've got this case. Can I come in and talk to you about it? He could have gone to the store and talked to the store owner directly. The store owner was, as we see in the affidavit, pretty quickly able to say some important things. One, these are the types of rings that I sold. Two, I recognize the ring that's in the picture here. I recognize Mr. Marion is one of my former clients. Those are things that by itself are significant because in the context of a case where it is gonna come down to a credibility contest, if you are going to put an affidavit on, it is critically important that you be able to present the testimony of a disinterested witness. But the lawyer didn't really say all this in this affidavit. We have to go by what he's saying, right? I do believe that we have to go by what he said. And the words in his affidavit are, look, they couldn't corroborate it. It doesn't say I did additional things myself to corroborate it as well. And it doesn't say that it doesn't. And I understand that the government or the state would suggest that we're supposed to construe that or presume that he did. But I think... Whether what you found out is sufficient to warrant your investigating further on your own or what... And then to decide whether or not you should, as a matter of strategy, rely on what you... The argument you already have. I believe that is a matter of judgment, Judge Gibbons. However, both Strickland and the Supreme Court's decision in Wiggins indicate that that judgment is only... It's only as good as the investigation you've done to decide that a particular strategy is superior to another. In this case, he had no idea that this was actually legitimate, right? Because he didn't take those basic steps. Again, we're not saying he had to know that a receipt would be hiding. He may not have been able to turn up the receipt even. I don't think... The receipt wasn't found until after the trial, right? Correct. And the man at the jewelry store said he couldn't verify anything until he got that receipt, because he didn't have receipts or any of that thing. I don't think that's what the... With respect, Judge Siler, I don't think that is what the jewelry store owner said. He did not... If I may... I thought he said the ring was kinda like stuff he had, but he couldn't verify it. He sold it. He sold the receipt, right? So what he specifically said is that the diamond ring... So he does speak to the receipt and confirms a number of things, but let's assume that defense counsel would not have had the receipt when he just, again, does some basic investigation to go and talk to the jewelry store owner. What the jewelry store owner says is that the diamond ring in the woman... The diamond ring that the woman in the photograph is wearing is consistent with the... Is consistent... I'm sorry. It's consistent with the rings I was selling at the time and still carry in my store. And then separate and apart from the receipt, he says, I was also shown a photograph of the defendant, Mr. Marion, and recognized him as a custer of mine. I think that last fact is particularly important because from the beginning, Mr. Marion turned himself in on these charges to face his accuser from day one. He was in custody. He is absolutely dependent on his defense attorney to not just listen to the information that's been given, but to substantiate, especially the easily verifiable things and the easily... I'm sorry? What isn't verifiable easily... What is not? In the absence of the receipt, there isn't anything to place Mr. Marion in that store, in the presence of that jeweler, buying that ring on that date at that time. Your Honor, I don't know that it has to be... Well, yeah. If you present that to a jury, they can say, yeah, well, gosh, maybe it was that day. Well, that's a reasonable doubt. Maybe. But why, in the absence of a really critical piece of information, isn't it maybe not a very good strategic decision, but a strategic decision not to go down that road, which really there aren't specifics on, and instead focus on the defense that the counsel did focus on? Well, Your Honor, I think, again, as the court is well aware, it may be the case that it was a strategic decision. Well, if it was, then... I don't think the fact that an attorney made a strategic decision ends the analysis, not under Strickland, not under Wiggins. I think it's pretty clear from the case law that it still has to be a sound strategic decision, and the court should evaluate that. And I would say that this was essentially a case where the government offered the eyewitness testimony of this very conflicted witness. This eyewitness testimony puts Mr. Marion at the scene. It is not inconsistent, and there's nothing to say that these are mutually exclusive defenses. In fact, I would argue that the submission of a alibi defense that may not be perfectly corroborated as to every element, but as to important details, the fact that this man who is a friend of Mr. Marion is not lying about the fact that there is a hamtramck jewelry store, and that there is a ring that was purchased, or a down payment made on that ring, whatever the financial obligation was that he made, I think that is important information. And frankly, the alibi defense is the only information that would negate this inference that's put out there by this eyewitness that Mr. Marion was present. The receipt and the jewelry store owner's testimony have no tendency to establish the particular time that your client was in the store. That's all the testimony of Mr. Lewis, right? I agree with that, yes. So, I mean, this whole line of that the alibi was more promising than it, in fact, may have been. Well, Your Honor... I mean, I don't know that... I mean, if the jury... It still is a matter of the new evidence would provide no corroboration for Lewis's testimony as to the particular time they were together. Yes, I would... This is how I would look at it, Your Honor. I am... It is not uncommon for a defense attorney to have a conversation with a witness that a defendant produces, and that witness says, hey, listen, I had a case like this last week. The witness says, you know what, I do have a video, and it will support everything that the defendant said and what I'm saying, and if you wanna come and get it from me, you can. That is not a difficult thing to do, and so it's several pieces of evidence that get considered together. I don't think that the corroborating evidence has to support every single aspect. The jury is entitled to consider the alibi, witness's testimony, and make what it will of that testimony, and then in conjunction with that, other information. Again, let's assume, for the sake of argument, that Mr. Sharg was not able to find the receipt itself. I think it would have been persuasive for the jury to hear, again, that this was a person who the jewelry store owner recognized as someone coming into the store. Yes, he sold rings of this kind, and so on and so forth. All of the evidence that the appellate attorney was able to discover, with the exception of the receipt itself, could have easily been acquired by trial counsel, and I think the failure for him to do even the most basic of investigation to confirm those performance. How much time elapsed between this visit to the jewelry store and the time of the trial? Was it about three years or something like that? It was about... So the jewelry store visit would have been the same day as the incident, which was on March 1st of 2006. The trial commenced, I believe, in late June of 2009. I believe in late 2009. So there was a fair amount of time that had passed, but again, I think... It's remarkable that Mr. Lewis had such a good memory of three years later. I don't think I could remember where I was three years before that. Well, I mean, if a good friend of yours gets accused of a crime... And again, this is information that Mr. Merrion was able to share with his defense attorney right from the beginning of this case, which was not all the way into 2009, but... Mr. Lewis would have had every reason to volunteer this information immediately. He would not have had the receipt, perhaps, at that time, but he would have known that he and the defendant had been together on that day. He could have made the same effort to pinpoint the precise time that he made years later. I mean, this... It's... Your Honor, with respect, I would suggest... I mean, and those things do go to the likely credibility or not of the affidavit. Well, I think the witness here did what any lay witness would do. They took the information to the defense attorney, whose duty it was to then carry that a step further. And I would also add, frankly, that the time between the initiation of proceedings, which was in late December, I believe of 2008, and the beginning of trial was only about a seven month period. So it's not as though the witness just sat on the information and did nothing. I'd like to say a few words, if I may, about prejudice and about the relevance of the Court of Appeals decision making in the state court. As to the question of prejudice, I think we are all clear that we don't have to show that likelihood of a different result or anything like that. This was a case that was based almost entirely on the word of a man who had successfully, for years, moved large quantities of marijuana without being detected by the police, and knew instinctively that he had to give the government something that it wanted if he was going to help himself. He wasn't shy to say this, and he completely agreed that he probably never would have been motivated to speak up had he not been abraded by federal agents himself. And it was against that very... The government was able to extract from this man that he identified Mr. Marion as the shooter. There were also some inconsistencies with his testimony. He said that there was a second man with my client and that that person was using an AK-47, yet police testimony established that there were no shell casings found from an AK-47 on the scene, and that ejected shell casings is something that they would have expected to see. And so this is not a case where the evidence was unprofessional error by counsel. This verdict would have been in place anyway. On the last point, I would say a couple of things. Number one... Oh, goodness, I'm gonna run out of time. I'm sorry. Keep going. Okay. All right. I would just say that Harrison v. Richter... You may finish your thought, although your red light is on. Thank you, Your Honor. Harrison v. Richter is not an absolute prohibition. There are instances, and it contemplates right in the language, that there are instances where it may be reasonable to conclude that there is another explanation for an adjudication on the merits, and I think that exists here for the reasons that I've explained in my brief. Just I would add that the Court of Appeals docket, the State Court of Appeals docket, on the denial of the 6500 motion indicates quite clearly that the record was not sent to the court in the same way that was at issue in McClellan v. Repelge. I'm not sure if I'm citing that case accurately, but I would just ask the court to consider that in addition to the other arguments that we've raised. Thank you, counsel. Thank you. Thank you again, Your Honors. I just have a couple of brief points I'd like to make. I meant to say during my opening remarks that trial counsel, in fact, did file a notice of alibi, and I think that's a very important fact to consider in this case, because that distinguishes this case from many of the cases that this court has issued where it's granted habeas relief, for example, Clixdale, Avery, Stewart, and so on. Cases where either no alibi notice was filed or an alibi notice was filed late, and the defense was alibi alone. And so in a case like that, certainly I think that presents a very serious question as to whether there was deficient performance. Here, we had a notice of alibi being filed with Charles Lewis being prominently on that list, and strategically, in our opinion, trial counsel decided to withdraw that calling of that witness and to proceed with a different defense. I was curious about who this Arnell was who was listed as an alibi witness. We don't know that, do we, from the record? It appears from Charles Lewis's affidavit that Arnell was somebody that a home that they stopped at along that route that they went that night. It appears to be the same person, somebody else they visited that night of the murder as well, it appears from my reading of the record. I think that... I know sister counsel mentioned something about proceeding with a alibi defense without the receipt. I think that would have been a total disaster in this case. It would have relied totally on Charles Lewis's credibility. We don't know what kind of credible witness he would have made. We don't know if he had convictions on his record. We don't know why it was that trial counsel decided not to call him. He could have made a terrible witness, and trial counsel made the decision not to call him, and it could have made things worse. I would know, and as a matter of fact, that he was charged, Marion was charged with first degree murder in this case, and he did... Second degree conviction in this case, so at least he has the possibility of getting out on parole someday. And I think Judge Gibbons, you made an excellent point that even with the receipt, the defense here is really dependent, again, on Charles Lewis to establish the time that they were in this store, because the receipt itself doesn't indicate the time that was... That these individuals were in the store purchasing that ring. So unless your honors have any further questions, I'll simply rely on our pleadings that are filed in this case. I think we do not. Thank you, counsel. Thank you very much. The case will be submitted, and there being nothing further to be argued this morning, the court may adjourn the court.